358 So.2d 217 (1978)
Valentino DeGeorge, Appellant,
v.
STATE of Florida, Appellee.
No. 77-120.
District Court of Appeal of Florida, Fourth District.
April 18, 1978.
Rehearing Denied May 23, 1978.
Richard L. Jorandby, Public Defender, and Frank B. Kessler, Asst. Public Defender, West Palm Beach, for appellant.
*218 Robert L. Shevin, Atty. Gen., Tallahassee, and Robert L. Bogen, Asst. Atty. Gen., for appellee.
GREEN, OLIVER L., Associate Judge.
The appellant was convicted of burglary, possession of burglary tools, use of a firearm while engaged in a criminal offense, and attempted grand larceny. He seeks reversal of his conviction on the charges of burglary and attempted grand larceny. We affirm; however, this appeal raises two significant points which bear discussion.
First, an omission was committed by trial counsel, which has become all too common in both civil and criminal litigation. While there is sufficient testimony in the record to support the verdicts, the principal method of relating the geographical features of the "structure" and its "curtilage" to the jury, was by the use of a diagram which the State's principal witness drew during his testimony. This diagram was not placed into evidence, and, therefore, is not available for this appeal. Such diagrams can easily be preserved. Even a diagram drawn on a chalkboard can be recorded through photographic reproduction.
It is not our purpose to discuss the technical prerequisites for the introduction of such a diagram into evidence; however, it is highly desirable that this evidence be available in the event of an appeal.
Secondly, we will discuss Sections 810.011(1) and 810.02, Florida Statutes, as they relate to the facts of this case. The appellant was charged, by Information, with having unlawfully entered or remained on the curtilage of a structure, property of R. Drummond, with intent to commit the offense of larceny therein, and, in the course thereof, was armed with a dangerous weapon, to-wit: a pistol, contrary to Florida Statutes 810.02(3).
The State's principal witness, Detective William Joseph Berthiaume, testified that on the night of July 27, 1976, he was on a stakeout, observing a place of business known as Drummond's Outboard Service. The premises were composed of a structure, and an immediately adjacent paved area, partially enclosed by a fence, a brick wall, and the structure itself. Bays of some description were located on this pavement area. The defendant was attempting to dismantle or remove the motors on two boats stored in or near these bays. It is apparent that the pavement area and bays are part and parcel with the business structure, all of which is known as Drummond's Outboard Service.
The proof fully supported the allegations; however, our research has failed to disclose that the term "curtilage" has ever been associated with a structure other than a dwelling house.[1] The premises in this case involved a structure which was a place of business.
We must, therefore, determine whether the language of the Florida Statutes (Section 810.011(1) and Section 810.01) are sufficiently informative to those of common understanding. The constitutionality of 810.02, Florida Statutes (1975), is not in question. Riddle v. State, 345 So.2d 1073 (Fla. 1977), also see Simmons v. State, 354 So.2d 1211 (Fla. 1978).
Section 810.02 of the Florida Statutes (1975) provides:
"810.02 Burglars.-
"(1) `Burglary' means entering and remaining in a structure or a conveyance with the intent to commit an offense therein, unless the premises are at the time open to the public or the defendant is licensed or invited to enter or remain." (Emphasis added.)
Section 810.011, Florida Statutes (1975) provides:
"810.011 Definitions.  As used in this chapter:
"(1) `Structure' means any building of any kind, either temporary or permanent, which has a roof over it, together with *219 the curtilage thereof." (Emphasis added.)
At common law, burglary was considered an offense against the habitation rather than against property. In England, where a person's house was usually enclosed together with a cluster of outbuildings by a wall or fence, used primarily for purposes of protection from outsiders, it became common to refer to such an enclosure as the "curtilage". Blackstone's Commentaries, IV, Page 225.
Florida adopted this common law version at the turn of the Twentieth Century by restricting the curtilage to that of a dwelling house. Chapter 4405, Laws of Florida, 1895, provided that:
"Whoever breaks and enters a dwelling house or any building or structure within the curtilage of a dwelling house, though not forming a part thereof. .. ." Chapter 4405, Laws of Florida (1895). (Emphasis supplied.)
The Florida Legislature thereafter enacted Section 810.01, which provided a distinguishable standard for breaking and entering a dwelling house and that of other buildings. With the enactment of the present Section 810.02, Florida Statutes (effective October 1, 1975), Section 810.01 was abolished and the common law definition of curtilage was expanded to apply to any buildings of any kind, either temporary or permanent, which had a roof over it.
In Phillips v. State, 177 So.2d 243 (Fla. 1st DCA 1965), the traditional common law meaning of curtilage was applied to sustain the reasonableness of a warrantless search and seizure outside the curtilage of a dwelling. The First District Court of Appeal noted the common law meaning of curtilage as, "the yard, courtyard, or piece of ground lying around or near to a dwelling house, included within the same fence."
The same court, nine years later, in Joyner v. State, 303 So.2d 60 (Fla. 1st DCA 1974), in the context of another search and seizure, upheld the validity of a search pursuant to a warrant authorizing search of the curtilage beyond the four walls of appellant's apartment. Again, the court applied the common law test of curtilage in finding a driveway to be a part of the curtilage of a multi-family dwelling. Furthermore, the court found that the curtilage need not be separated from other lands by a fence, nor does the intersection of a divisional fence necessarily affect the relation of a building thus separated by it.
More recently, in Merrick v. State, 338 So.2d 77 (Fla. 4th DCA 1976), the Fourth District Court of Appeal, in construing the validity of a search warrant, applied the common law definition of curtilage in declaring a separate cottage not to be within the curtilage of the larger house described in a search warrant. Each of the above three cases involved the search of an area incidental to a dwelling.
Thus, since there has been no need to do so, no Florida court has yet to interpret "curtilage" to expand beyond its common law definition by applying it to commercial structures.[2]
A plain reading of 810.011(1), extends curtilage to that of a structure, including a building of any kind, for purposes of defining a burglary. Resort to case law and statutory authority of other states sheds little light on our Legislature's apparent expansion of the common law meaning of "curtilage" in this area.
Examination of prior cases leaves little doubt that curtilage, at law, had no application to any building not used as a dwelling, Turknett v. State, 36 Okla. Cr. 401, 254 P. 985 (1929). In Turknett, an Oklahoma court held that language purporting to give authority to search the "curtilage and appurtenances thereunto belonging" had no meaning as applied to a filling station and park, as such.
Although traditionally the offense of burglary involved the invasion of possessory rights, as distinguished from ownership rights, Jackson v. State, 259 So.2d 739 (Fla. 1st DCA 1972), a few states have found other means to expand the definition of burglary to adjoining areas of a commercial *220 structure without relying on expansion of the term "curtilage."
This has been accomplished through specific statutory language delineating areas of coverage. Thus, the Supreme Court of Delaware, in Jenkins v. State, 230 A.2d 262 (1967), found a junkyard to be a subject of burglary in the fourth degree. The statute being applied, 11 Del. C395, proscribed the breaking and entering of a "building." The statutory definition of a "building" included an "enclosure." The Delaware court held that the junkyard near an office and surrounded by a fence, was an "enclosure" within the meaning of the Delaware statute.
Similarly, an Arizona court dealt with a statute expanding burglary to cover entry of an enclosed commercial yard, used in storing equipment and supplies. State v. Jones, 27 Arizona App. 180, 552 P.2d 769 (1976). The evidence at trial disclosed the location of a company building adjacent to the fenced-in area. In interpreting the statute, A.R.S. 13.302, to require more than entry into the fenced area and removal of items merely being loaded, the Arizona court took note of the fact, "we are aware of no similar provision in the burglary statutes of other states." Jones, supra.
A further examination of foreign case law reveals that no state has gone as far in expanding the coverage of burglary as Florida. Where other states have sought to expand burglary to non-dwelling structures and their appendages, this intent has been effectuated through specific language clearly defining the applicable coverage, without resort to self-defining common law terminology. No other state has applied curtilage in the manner Florida seeks to treat it. Clearly, if the Legislature desired to expand coverage of the statute pertaining to non-dwelling structures, this court must construe "curtilage" in a manner contrary to its common law meaning.
Florida Statutes, Section 2.01 (Supp., 1975) provides that the common laws of England which are of general and not local nature, are in force in this state if not inconsistent with the constitution and laws of the United States and the acts of the state Legislature. The words, "common laws of England", refer not only to the common law as declared by England, but also as declared by courts of the American States. State v. Egan, 287 So.2d 1 (Fla. 1973); Coleman v. Davis, 120 So.2d 56 (Fla. 1st DCA 1960). A statute that expressly or by implication supersedes the common law and which does not do violence to organic provisions or principles of the state, becomes the controlling law within its proper sphere of operation. Atlas Travel Service, Inc. v. Morelly, 98 So.2d 816 (Fla. 1st DCA 1957). This court may adopt the term "curtilage" without reference to the common law restriction to dwellings to preserve the plan meaning of Florida Statutes Section 810.011(1).
We do not seek to determine by this decision, the varied geographical arrangements which may constitute the "curtilage" of a "structure." It is sufficient for our purposes, to note that in the case below the evidence was sufficient to support the verdict regarding burglary of the curtilage of a structure.
We have examined the appellant's point concerning his conviction of attempted grand larceny and find no error.
The decision herein appealed is affirmed.
AFFIRMED.
DOWNEY and DAUKSCH, JJ., concur.
NOTES
[1] On the eve of publication of this opinion the Third District Court of Appeal decided Greer v. State, 354 So.2d 952 (Fla.App. 1978), which held that the term "curtilage" properly applies to the area surrounding a business structure.
[2] Id.