645 So.2d 555 (1994)
Shane D. HAMILTON, Appellant,
v.
STATE of Florida, Appellee.
No. 93-01230.
District Court of Appeal of Florida, Second District.
November 16, 1994.
*557 Mark King Leban, Law Offices of Mark King Leban, P.A., Miami, and Terrence J. McWilliams, Coconut Grove, for appellant.
Robert A. Butterworth, Atty. Gen., Tallahassee, and William I. Munsey, Jr., Asst. Atty. Gen., Tampa, for appellee.
LAZZARA, Judge.
Shane D. Hamilton appeals his judgments and sentences for grand theft in the second degree, burglary of a dwelling, and second-degree felony murder imposed after a jury trial. We find merit in his contention that the trial court committed reversible error in deviating from the standard jury instruction concerning the definition of what constitutes a "structure." Accordingly, we reverse the burglary and murder convictions and remand for a new trial.[1] We reject, however, Hamilton's claims that the trial court erred in failing to give a theory of defense instruction based on justifiable and excusable homicide, see Parker v. State, 570 So.2d 1048 (Fla. 1st DCA 1990), and in denying his motion for judgment of acquittal.
Hamilton was charged in one count of an information with burglarizing the dwelling of Stephen Jenks. He was charged in a separate count with the second-degree felony murder of Brian Thomas. The state's theory of prosecution as to burglary was that Hamilton and Thomas entered the curtilage of Jenks' dwelling with the intent to steal motors attached to a boat located next to the home. The state's theory as to second-degree murder was that during the perpetration of this burglary, Jenks, the innocent homeowner, shot and killed Thomas. Such theories, if proven, would clearly support convictions for burglary of a dwelling under Baker v. State, 636 So.2d 1342 (Fla. 1994), and second-degree felony murder under State v. Dene, 533 So.2d 265 (Fla. 1988).
At trial, the state presented evidence demonstrating that Hamilton and Thomas entered Jenks' backyard and proceeded to remove outboard motors from a boat parked on a trailer against the back wall of Jenks' home. When Jenks observed this activity from inside his home, he attempted to call the police but discovered his phone did not work.[2] He then secured a shotgun, went out the front door, and confronted Hamilton and Thomas in the backyard. During the confrontation, Jenks shot and killed Thomas and then fired at a truck in which Hamilton was fleeing the scene.
The testimony was unrefuted that this home was Jenks' dwelling and that at the time of the incident he was occupying it as such. The state also introduced photographic evidence depicting the backyard of the home. It showed the boat in a semi-secluded area adjacent to the home surrounded by several unevenly spaced trees. This was the only evidence adduced tending to establish that the backyard was enclosed.
At the jury instruction charge conference, Hamilton requested that the trial court give the definition of "structure" contained in the Florida Standard Jury Instructions in Criminal Cases. That definition provides that *558 "`[s]tructure' means any building of any kind, either temporary or permanent, that has a roof over it, and the enclosed space of ground and outbuildings immediately surrounding the structure." Fla.Std.Jury Instr. (Crim.), at 136, (Burglary) (emphasis added). Instead, the trial court opted, without explanation, to give a modified instruction requested by the state. The instruction tracked the statutory definitions of "structure" and "dwelling" but then proceeded to define "curtilage" as "the ground and buildings immediately surrounding a structure and dwelling and customarily used in connection with it." This definition was taken almost verbatim from A.E.R. v. State, 464 So.2d 152, 153 (Fla. 2d DCA), review denied, 472 So.2d 1180 (Fla.), cert. denied, 474 U.S. 1011, 106 S.Ct. 541, 88 L.Ed.2d 471 (1985).
We conclude that the trial court erred in giving this modified instruction in place of the standard instruction without stating "on the record or in a separate order the respect in which [it found] the standard form erroneous or inadequate and the legal basis of [its] finding." Fla.R.Crim.P. 3.985. A trial court's obligation in that regard is mandatory. Moody v. State, 359 So.2d 557, 560 (Fla. 4th DCA 1978). We also conclude that the modified instruction did not completely reflect the law of Florida regarding the definition of curtilage.
We begin our discussion with an examination of relevant sections of chapter 810, Florida Statutes (1991), that define the crime of burglary. We also focus on the recent interpretive gloss placed on the burglary statute by the supreme court in Baker.
Section 810.02(1) provides in pertinent part that "`[b]urglary' means entering or remaining in a structure ... with the intent to commit an offense therein." Section 810.02(3) enhances the penalty for burglary if the structure entered is a dwelling. Section 810.011(1) defines structure to mean "a building of any kind, either temporary or permanent, which has a roof over it, together with the curtilage thereof." (Emphasis added.)[3] Section 810.011(2) defines a dwelling as "a building or conveyance of any kind, either temporary or permanent, mobile or immobile, which has a roof over it and is designed to be occupied by people lodging therein at night, together with the curtilage thereof." (Emphasis added.)[4] Thus, as the court noted in Baker, "[t]he legislature has defined `dwelling' such that the definition includes the curtilage." 636 So.2d at 1343. Consistent with that determination, it concluded that under the burglary statute "it would not matter whether [the defendant] was in [the homeowner's] secluded back yard or back bedroom; in either circumstance, the courts must consider him to have been within [the homeowner's] dwelling." 636 So.2d at 1344 (emphasis added).
In reaching this conclusion, the court observed that "the legislature has so thoroughly modified the burglary statute that the present statute must be said to completely abrogate and supersede the common law crime of burglary." 636 So.2d at 1344. Noting the legislature's addition of curtilage to the definitions of "structure" and "dwelling," it then determined that "the curtilage is not a separate location wherein a burglary can occur. Rather, it is an integral part of the structure or dwelling that it surrounds. Entry onto the curtilage is, for the purposes of the burglary statute, entry into the structure or dwelling." 636 So.2d at 1344 (emphasis added). Given this analysis, it is thus readily apparent that what constitutes the curtilage is a significant issue where there is no proof, as here, of an actual entry into the physical structure itself.
In this case, Hamilton requested the definition of structure contained in the standard jury instructions approved for use in criminal cases by the Florida Supreme Court. That definition clearly states that the area of ground immediately surrounding a structure (the curtilage) must be enclosed. The state, realizing the possible deficiency of its proof *559 regarding enclosure, prevailed upon the trial court to give a modified instruction based on language appearing in an appellate opinion.[5] This instruction clearly eliminated the requirement in the standard instruction that the curtilage be enclosed. As noted, the trial court never gave a reason why the standard instruction was legally erroneous or inadequate such that there were "extraordinary circumstances" requiring that it be modified to "accurately and adequately state the relevant law." Moody, 359 So.2d at 560. This was reversible error in light of what we perceive to be the relevant law of Florida regarding the necessity that the curtilage be enclosed.
As noted, the legislature did not define the term curtilage in the burglary statute. Nor can we determine from the statute the legislature's clear intent as to its meaning. Thus, we resort to time-honored principles of statutory construction to assist us in gleaning the definition of curtilage under the burglary statute.
We first analyze relevant case law that has considered the concept of curtilage in the context of the burglary statute. See, e.g., Tingley v. Brown, 380 So.2d 1289 (Fla. 1980). We turn again to Baker for guidance. We find it compelling that in determining that the defendant entered the homeowner's "dwelling" by entry onto the curtilage, the supreme court took great care to point out that the area entered (the yard) was "secluded" and "protected by a fence and shrubbery where the owner had an expectation of privacy." 636 So.2d at 1344. Thus, by emphasizing the "secluded" and "protected" nature of the curtilage, it is reasonable to conclude that the court recognized the necessity that the curtilage of a dwelling or structure somehow be enclosed before it can be considered an extension of the dwelling or structure and thus covered by the burglary statute.[6]
This conclusion that proof of enclosure is necessary is also consistent with the facts of prior Florida cases upholding burglary convictions premised on the theory that the curtilage was entered. See State v. Rolle, 577 So.2d 997 (Fla. 4th DCA 1991) (defendant's truck went through gate and backed in through garage door); T.J.T. v. State, 460 So.2d 508 (Fla. 3d DCA 1984) (defendant attempted to remove window from home with fenced-in yard); Tobler v. State, 371 So.2d 1043 (Fla. 1st DCA), cert. denied, 376 So.2d 76 (Fla. 1979) (defendant entered premises after cutting lock off gate to a fence surrounding business); DeGeorge v. State, 358 So.2d 217 (Fla. 4th DCA 1978) (defendant removed motors from boats parked on paved area of premises partially enclosed by a fence and a brick wall); Greer v. State, 354 So.2d 952 (Fla. 3d DCA 1978) (defendant climbed over a six-foot wall into enclosed parking area surrounding business structure).[7]But see J.E.S. v. State, 453 So.2d 168 (Fla. 1st DCA 1984) (defendant stole bicycle from driveway, which was determined to be within the curtilage, but opinion does not indicate whether driveway enclosed).
We also find support for the proposition that the concept of curtilage includes enclosure from cases construing the meaning of curtilage within the context of the Fourth Amendment. In Phillips v. State, 177 So.2d 243, 244 (Fla. 1st DCA 1965), the court observed that curtilage "has a distinctive meaning in legal parlance" and "has been described as the yard, courtyard, or piece of ground lying around or near to a dwelling house, included within the same fence." It "denotes only the enclosure surrounding a *560 dwelling house."[8] The court in United States v. Romano, 388 F. Supp. 101, 104 n. 4 (E.D.Pa. 1975), noted that the word was partially derived "from the Latin cohors (a place enclosed around a yard)" and that its modern meaning "has been extended to include any land or building adjacent to a dwelling ... enclosed some way by a fence or shrubs."[9] Finally, and most significantly, in United States v. Dunn, 480 U.S. 294, 107 S.Ct. 1134, 94 L.Ed.2d 326 (1987), the Court relied in part on the common law concept of curtilage in interpreting the reach of the Fourth Amendment. In fashioning a four-prong test to resolve curtilage questions, it emphasized that two of the factors to consider were whether the area at issue was within an enclosure surrounding the home and whether the resident took steps to protect the area from being observed by passers-by. 480 U.S. at 301, 107 S.Ct. at 1139.[10]See also State v. Sarantopoulos, 604 So.2d 551, 553 (Fla. 2d DCA 1992), affirmed, Sarantopoulos v. State, 629 So.2d 121 (Fla. 1993) (recognizing under Dunn test that area of defendant's fenced backyard was clearly within the curtilage of his home).
We next look to the dictionary definition of curtilage to ascertain its plain and ordinary meaning. Green v. State, 604 So.2d 471 (Fla. 1992). In doing so, we seek guidance from the same reference source that the supreme court relied on in Green to determine the common meaning of the statutory term at issue in that case. That source defines "curtilage" to mean "a yard, courtyard, or other piece of ground included within a fence surrounding a dwelling house." Merriam-Webster's Third New International Dictionary 558 (1986). Thus, the plain and ordinary meaning of curtilage necessarily encompasses the concept of enclosure.
Finally, we focus on the common law definition of curtilage because "[i]t is the general rule that statutes, including criminal ones, should be construed to reflect the common law, unless ... the legislature clearly indicates otherwise." Deehl v. Knox, 414 So.2d 1089, 1092 (Fla. 3d DCA 1982). At common law, the curtilage consisted of the land surrounding the dwelling house, including outbuildings, which were enclosed within a common fence. 4 William Blackstone, Commentaries *225. In our view, the legislature's use of the word curtilage in the burglary statute without defining it, and without otherwise clearly indicating that its meaning differs from its use at common law, manifests its clear intent that the term continues to encompass the concept of enclosure, notwithstanding the supreme court's recent pronouncement in Baker that the common law crime of burglary has been abolished in Florida. See State v. SCM Glidco Organics Corp., 592 So.2d 710 (Fla. 1st DCA 1991) (court not prohibited from looking to common law to aid in establishing legislative intent even though common law as to crime at issue no longer in effect in Florida).[11]
Moreover, to construe this term in any other fashion would run afoul of another basic tenet of statutory construction that compels a court to interpret a statute so as to avoid a construction that would result in unreasonable, harsh, or absurd consequences. E.g., City of St. Petersburg v. Siebold, *561 48 So.2d 291, 294 (Fla. 1950). That is, to define curtilage for purposes of the burglary statute so as to eliminate the requirement of enclosure would mean that a person who entered an open yard surrounding a dwelling in broad daylight, without the homeowner's consent, with the intent to take a piece of fruit from a tree located in the yard, would be guilty of a second-degree felony. § 810.02(3).[12] If the homeowner then confronted this person and became the victim of a simple assault or battery, the offending person would be guilty of a first-degree felony punishable by a term of years not exceeding life. § 810.02(2)(a). We cannot perceive that the legislature intended the burglary statute to be applied to produce such harsh results.[13]
We conclude, therefore, that the definition of "structure" found in the Florida Standard Jury Instructions in Criminal Cases correctly states the relevant law that defines the curtilage as the "enclosed space of ground and outbuildings immediately surrounding [the] structure." We also determine that this definition comports with the legislature's intent as to the meaning of curtilage in the burglary statute. Thus, when the trial court gave a modified instruction eliminating the requirement of enclosure, it deprived the jury of its responsibility to make a proper legal determination, on the facts presented, of whether the area that Hamilton entered constituted the curtilage of Jenks' dwelling under Florida's burglary statute. This was reversible error requiring a new trial on the burglary charge. And, because the burglary was an essential element of the felony murder charge, the conviction for second-degree murder must also be reversed and remanded for a new trial. See Mahaun v. State, 377 So.2d 1158 (Fla. 1979).
As in DeGeorge, "[w]e do not seek to determine by this decision, the varied geographical arrangements which may constitute the `curtilage' of a `structure.'" 358 So.2d at 220. In light of the supreme court's recent opinion in Baker, however, we do determine that whether, under Florida's burglary statute, the curtilage must be enclosed, and to what extent, are questions of great public importance that only the Florida Supreme Court can definitively answer. Accordingly, we certify the following two-part question:
DOES FLORIDA'S BURGLARY STATUTE REQUIRE THAT THE "CURTILAGE" BE ENCLOSED AND, IF SO, TO WHAT EXTENT?
We realize that the second prong of our question is open-ended. We find it difficult, however, to be more precise given the myriad arrangements an owner can fashion in enclosing "the space of ground and outbuildings immediately surrounding [a] structure."
Reversed and remanded for new trial; question certified.
FRANK, C.J., and DANAHY, J., concur.
NOTES
[1] Although Hamilton does not challenge his conviction for grand theft, he claims, and we agree, that the trial court must correct the judgment to reflect a conviction for a third-degree felony. Additionally, depending on the outcome of the proceedings on retrial, the sentence for this offense may be affected.
[2] Hamilton confessed that he and Thomas had cut the phone line.
[3] Section 810.011, however, does not define curtilage.
[4] As noted, the trial court gave these statutory definitions of "structure" and "dwelling" to the jury. We observe, in that regard, that "[g]enerally, jury instructions which track statutory language are not erroneous." Bohannon v. Thomas, 592 So.2d 1246, 1248 (Fla. 4th DCA 1992).
[5] We caution trial courts that "[p]assages from appellate opinions, taken out of context, do not always make for good jury instructions." Sarduy v. State, 540 So.2d 203, 205 (Fla. 3d DCA 1989).
[6] This conclusion is underscored by reference to the facts in Baker. As the court noted, "[t]he property involved [was] a private home, hidden from the road in front by trees and shrubs and separated from the neighbor's house by a six-foot privacy fence. A chain-link fence surround[ed] the backyard of the victim's residence. In addition to the fences, this area is secluded by shrubs." 636 So.2d at 1343.
[7] In Sealey v. State, 379 So.2d 430 (Fla. 2d DCA 1980), we adopted the rationale of Tobler, DeGeorge, and Greer and concluded that the burglary statute extended the application of curtilage to any building, not just a dwelling. We did not, however, discuss the facts of Sealey.
[8] This definition of curtilage was quoted with approval in Waters' Dictionary of Florida Law 174 (1st ed. 1991).
[9] This definition of curtilage was quoted with approval in Black's Law Dictionary 384 (6th ed. 1990).
[10] In accordance with article I, section 12, Florida Constitution (1982), Florida courts are required to follow this test in search and seizure cases. Perez v. State, 620 So.2d 1256 (Fla. 1993).
[11] We recognize that the term curtilage at common law, when used in the context of burglary, had no meaning except in connection with a dwelling house. 4 William Blackstone, Commentaries *225. We also acknowledge, based on some of our prior citations of authority, that in the modern era this common law concept continues to be used in that context for definitional purposes. The legislature, however, as noted in Baker, has now added the definition of curtilage to a structure. Thus, we find it reasonable to conclude that in making this statutory addition, the legislature intended to apply the common law concept of curtilage to all structures, and not just to dwellings. See DeGeorge v. State, 358 So.2d 217, 220 ("This court may adopt the term `curtilage' without reference to the common law restriction to dwellings to preserve the plan [sic] meaning of Florida Statutes Section 810.011(1).").
[12] As noted in Baker, "[s]tealth is not an element of burglary." Instead, "it is an evidentiary tool [under section 810.07] with which to establish prima facie proof of intent to commit an offense." 636 So.2d at 1344.
[13] When confronted with the apparent absurdity of these hypotheticals at oral argument, the state's response was to suggest that no reasonable prosecutor would use the burglary statute in these situations. To rely on such an assumption, however, is to risk violating one of the basic notions of due process that a criminal statute not be susceptible to arbitrary and selective enforcement "by vesting undue discretion as to its scope in those who prosecute." McKenney v. State, 388 So.2d 1232, 1234 (Fla. 1980).