660 So.2d 1038 (1995)
STATE of Florida, Petitioner,
v.
Shane D. HAMILTON, Respondent.
No. 84783.
Supreme Court of Florida.
September 14, 1995.
Robert A. Butterworth, Atty. Gen.; Robert J. Krauss, Senior Assistant Attorney *1039 General, Chief of Criminal Law, and William I. Munsey, Jr. and Scott A. Browne, Assistant Attorneys General, Tampa, for Petitioner.
Mark King Leban of the Law Offices of Mark King Leban, P.A., Miami; and Terrence J. McWilliams, Coconut Grove, for Respondent.
ANSTEAD, Justice.
We have for review a decision of the Second District Court of Appeal passing upon the following question certified to be of great public importance:
DOES FLORIDA'S BURGLARY STATUTE REQUIRE THAT THE "CURTILAGE" BE ENCLOSED AND, IF SO, TO WHAT EXTENT?
See Hamilton v. State, 645 So.2d 555, 561 (Fla. 2d DCA 1994). We have jurisdiction. Art. V, § 3(b)(4), Fla. Const. We answer the certified question in the affirmative and approve the definition of curtilage contained in the instructions prepared by the Committee on Standard Jury Instructions in Criminal Cases.

FACTS[1]
Shane Hamilton was charged in one count of an information with burglarizing the dwelling of Stephen Jenks. He was charged in a separate count with the second-degree felony murder of Brian Thomas. The State's theory of prosecution as to the burglary was that Hamilton and Thomas entered the yard of Jenks' home with the intent to steal motors attached to a boat located in the yard next to the home. As to the second-degree murder charge, the State's theory was that during the perpetration of this burglary, Jenks, the innocent homeowner, shot and killed Thomas, and, hence, Hamilton, as a principal to the burglary, was guilty of felony murder.
At trial the State presented evidence that Hamilton and Thomas entered Jenks' backyard and proceeded to remove outboard motors from a boat parked on a trailer in the yard. The backyard was not enclosed by fencing or shrubs or in any other manner.[2] When Jenks saw them, he attempted to call the police but his phone did not work.[3] He then secured a shotgun and confronted Hamilton and Thomas in the backyard. Jenks shot and killed Thomas and fired at a truck in which Hamilton was fleeing.
Hamilton requested that the trial court instruct the jury on the definition of "structure" contained in the Florida Standard Jury Instructions in Criminal Cases. That definition provides that "`[s]tructure' means any building of any kind, either temporary or permanent, that has a roof over it, and the enclosed space of ground and outbuildings immediately surrounding the structure." Fla.Std.Jury Instr. (Crim.) 136 (emphasis added). However, the trial court opted, without explanation, to give a modified instruction requested by the State that contained no requirement that the yard be "enclosed" and defined "curtilage" as "the ground and buildings immediately surrounding a structure and dwelling and customarily used in connection with it."[4]
Under these instructions, the jury found Hamilton guilty of grand theft in the second degree, burglary of a dwelling, and second-degree felony murder. On appeal, the district court, in a thorough and well-reasoned opinion, held that the trial court committed reversible error in deviating from the standard jury instruction on the definition of "structure," and in failing to include in its instructions a requirement that the curtilage be enclosed. The district court reversed the burglary and murder convictions and remanded for a new trial; however, the court rejected Hamilton's claims that the trial *1040 court erred in denying his motion for judgment of acquittal and in failing to give a theory of defense instruction based on justifiable and excusable homicide. See Parker v. State, 570 So.2d 1048 (Fla. 1st DCA 1990).

LAW AND ANALYSIS
Currently, section 810.02(1), Florida Statutes (1991),[5] defines burglary as "entering or remaining in a structure or conveyance with the intent to commit an offense therein." (Emphasis added). Section 810.02(3) enhances the penalty for burglary if the structure entered is a dwelling or there is a human being in the structure or conveyance at the time the crime is committed. At first blush, "structure or conveyance" seems to be an easily understandable and straightforward expression that is synonymous with "building" or "vehicle." But that is not the case. Section 810.011(1) defines a "structure" to mean "a building of any kind, either temporary or permanent, which has a roof over it, together with the curtilage thereof." Id. § 810.011(1) (emphasis added). Further, "dwelling" as used in section 810.011(2) is defined as "a building or conveyance of any kind, either temporary or permanent, mobile or immobile, which has a roof over it and is designed to be occupied by people lodging therein at night, together with the curtilage thereof." Id. § 810.011(2) (emphasis added). By the use of the phrase "together with the curtilage thereof," it is apparent that the legislature intended that the terms "structure" and "dwelling" also encompass the "curtilage," a description not limited to buildings or conveyances. However, section 810.011 does not define "curtilage," even though a definition is crucial to comprehending the full scope of the crime of burglary. The legislature apparently intended that the definition of curtilage already in use in the courts be applied. The district court concluded that the Florida Standard Jury Instructions in Criminal Cases "correctly states the relevant law that defines the curtilage as the `enclosed space of ground and outbuildings immediately surrounding [the] structure.'" Hamilton, 645 So.2d at 562.

BURGLARY
At common law, burglary was defined as the breaking and entering of the dwelling house of another in the nighttime with the intent to commit a felony. 4 William Blackstone, Commentaries on the Laws of England 223-228 (1769). At the turn of the twentieth century, Florida enacted a burglary statute very similar to the common law version of burglary. Chapter 4405, Laws of Florida (1895) (eventually codified at section 810.01, Florida Statutes (1941)), provided that:
Whoever breaks and enters a dwelling house, or any building or structure within the curtilage of a dwelling house though not forming a part thereof, with intent to commit a felony, or after having entered with such intent breaks such dwelling house or other building or structure aforesaid, if he be armed with a dangerous weapon, or have with him any nitro-glycerine, dynamite, gunpowder or other high explosive at the time of breaking and entering, or if he arm himself with a dangerous weapon, or take into his possession any such high explosive within such building, or if he make an assault upon any person lawfully therein, shall be punished by imprisonment in the state prison for life, or for such term of years as may be determined by the court.
If the offender be not armed, nor arm himself with a dangerous weapon as aforesaid, nor have with him nor take into his possession any high explosive as aforesaid, nor make an assault upon any person lawfully in said building, he shall be punished by imprisonment in the state prison not exceeding twenty years.
This statute prohibited the breaking and entering of homes as well as buildings and structures in close proximity thereto, or within the "curtilage." Around the same time, the legislature also enacted a statute which *1041 punished the breaking and entering of "any other buildings or any ship or vessel." See § 810.02, Fla. Stat. (1941). In 1974, with the enactment of section 810.011 (effective July 1, 1975), section 810.01 was repealed and the definition of burglary was expanded to apply to buildings of any kind, either temporary or permanent, which had roofs.
Florida's present burglary statute expands the definition of burglary to include not only buildings, but also the grounds around the buildings. The legislature has redefined the crime of burglary as it was treated at common law, but has utilized the common law term "curtilage" to expand the reach of the burglary statute beyond buildings and vehicles. In writing for the Fourth District, Associate Judge Oliver Green has noted that an
examination of foreign case law reveals that no state has gone as far in expanding the coverage of burglary as Florida. Where other states have sought to expand burglary to non-dwelling structures and their appendages, this intent has been effectuated through specific language clearly defining the applicable coverage, without resort to self-defining common law terminology. No other state has applied curtilage in the manner Florida seeks to treat it.
DeGeorge v. State, 358 So.2d 217, 220 (Fla. 4th DCA 1978). The question remains as to whether Florida's burglary statute requires an element of enclosure for an area to be considered curtilage. In order to answer the question, we must examine the historical and common law origins of the term "curtilage."

CURTILAGE
The cluster of buildings which were in reasonably close proximity to a dwelling house in England, and which were used by the dweller, together with the dwelling house, would usually be encircled by a fence or other enclosure. The common ground within the enclosure was designated as the curtilage, and all the buildings within the curtilage were considered part of the mansion-house or dwelling. 1 Emlin McClain, McClain on Criminal Law § 497 (1897). The term curtilage was used in the crime of burglary as a way to identify and protect not only the main building and its occupants but also those buildings closely associated with it.
The word curtilage is derived from the Latin cohors (a place enclosed around a yard) and the old French cortilliage or courtillage which today has been corrupted into courtyard. United States v. Romano, 388 F. Supp. 101, 104 n. 4 (E.D.Pa. 1975). In fact, one dictionary attributes the origin of the word courtyard to the "land with the castle and out-houses, inclosed often with high walls, where the old barons sometimes held court in the open air." Anderson's Dictionary of Law 301 (1890). Historically, curtilage referred to the land and outbuildings immediately adjacent to a castle that were in turn surrounded by a high stone wall. Romano, 388 F. Supp. at 104 n. 4. Moreover, "the common law notion of a mansion involved a common inclosure protected originally by a surrounding wall for purposes of defense, or, later, by some sort of fence for the purpose of excluding strangers and securing privacy." 1 Emlin McClain, McClain on Criminal Law § 497 (1897); see also C.S. Parnell, Annotation, Burglary: Outbuildings or the Like as Part of the "Dwelling House," 43 A.L.R.2d 831, 835 (1955).
Consistent with this history, the primary definitions of curtilage in a majority of legal dictionaries require an enclosure,[6] although at least one legal dictionary has explicitly dispensed with the enclosure requirement in one of its secondary definitions.[7] Some dictionaries now define curtilage, as it is used in *1042 connection with the crime of burglary, without any reference to an enclosure or fence.[8] Consistent with the variety of dictionary definitions of curtilage, some jurisdictions appear to have eliminated the enclosure requirement in defining the parameters of the crime of burglary. 3 Charles E. Torcia, Wharton's Criminal Law § 336 (14th ed. 1980).[9] In McNutt v. State, 23 Ala.App. 43, 121 So. 432, 434, cert. denied, 219 Ala. 116, 121 So. 435 (1929), the court stated:
[U]nder our decisions, curtilage usually includes "the yard, or garden, or field which is near to and used in connection with the dwelling." In Ivey v. State, 61 Ala. 58, it is said: "It is not necessary either should be surrounded by an inclosure. It is propinquity to the dwelling, and the use in connection with it ..., for family purposes, which the statute regards, and not the fact of its inclosure."
In Bunn v. State, 265 S.E.2d 88 (Ga.Ct.App. 1980), the court found that curtilage "includes the yards and grounds of a particular address, its gardens, barns, buildings, etc." and the fact that there is no fence or enclosure is immaterial and unnecessary to mark the curtilage's boundary. Id. at 90; accord State v. Bugg, 66 Kan. 668, 72 P. 236, 237 (1903). In North Carolina, "curtilage is the land around a dwelling house upon which those outbuildings lie that are `commonly used with the dwelling house.'" State v. Fields, 315 N.C. 191, 337 S.E.2d 518, 520 (1985).
Interestingly, the United States Supreme Court in United States v. Dunn, 480 U.S. 294, 107 S.Ct. 1134, 94 L.Ed.2d 326 (1987), held that for purposes of determining whether an area is part of the "curtilage," and, hence, entitled to Fourth Amendment protection, the fact of enclosure is only one of four factors to be considered. The court described the four-factor test: (1) the proximity of the area claimed to be curtilage to the home; (2) whether the area is included within an enclosure surrounding the home; (3) the nature of the uses to which the area is put; and (4) the steps taken by the resident to protect the area from observations by people passing by. Id. at 301, 107 S.Ct. at 1139-40. In discussing the relationship between fences and the extent of curtilage, the Court held that fencing configurations are important factors in defining the curtilage of a home, but the nearest fence surrounding a fenced house does not necessarily define the extent of curtilage. Id. at 301 n. 4, 107 S.Ct. at 1139 n. 4. Rather, the Court said, for purposes of determining Fourth Amendment protection, "the primary focus is whether the area in question harbors those intimate activities associated with domestic life and the privacies of the home." Id.

Curtilage in Florida
As noted previously, in England a person's house with its cluster of outbuildings was usually enclosed by a wall or fence, and this enclosed area was referred to as the curtilage. 4 William Blackstone, Commentaries on the Laws of England 225 (1769). This concept of curtilage was part of the common law. Florida, of course, has incorporated the common law into its own body of law. However, as the law of burglary has changed, Florida courts have been somewhat inconsistent *1043 and imprecise in defining curtilage. This lack of precision may be based, in part, upon the differing contexts in which the issue arises and the different purposes for which the term is used.
Specifically, the use of the common law concept of curtilage, which was used to identify those buildings intimately connected with the privacy of the home, makes good sense in search and seizure cases where expectations of privacy are paramount. On the other hand, utilizing the imprecise concept of curtilage to define the physical parameters of the premises protected by the burglary statute, which finds its theoretical basis and origin in the protection of a person's right of habitation, is awkward and invites inconsistency. See Wayne R. LaFave & Austin W. Scott, Jr., Criminal Law § 8.13(c), at 796 (2d ed. 1986); 4 William Blackstone, Commentaries on the Laws of England 223 (1769).
In Phillips v. State, 177 So.2d 243 (Fla. 1st DCA 1965), the district court, in a search and seizure case, observed that curtilage "has a distinctive meaning in legal parlance" and "has been described as the yard, courtyard, or piece of ground lying around or near to a dwelling house, included within the same fence." Id. at 244 (citing State v. Taylor, 45 Me. 322 (1858)). The court then defined curtilage as "the yard or court for the protection and security of the mansion house; an enclosure belonging to a dwelling house." Id. (citing State v. Shaw, 31 Me. 523 (1850)).[10] The court noted that at common law the word curtilage denoted "only the enclosure surrounding a dwelling house." Id. The same court has stated that
the curtilage is the space of ground adjoining the dwelling house, used in connection therewith in the conduct of family affairs and for carrying on domestic purposes. It need not necessarily be separated from other lands by a fence, nor does the intersection of a divisional fence necessarily affect the relation of a building thus separated from it.
Joyner v. State, 303 So.2d 60, 63 (Fla. 1st DCA 1974) (emphasis added), cert. discharged, 325 So.2d 404 (Fla. 1976). The Joyner court held that the parking area of an apartment house was part of the apartment house's curtilage for purposes of executing a search warrant of an apartment and the curtilage thereof. Id. at 64; cf. Menendez v. State, 521 So.2d 210, 213 (Fla. 1st DCA 1988) (holding that car parked in motel parking lot was within curtilage of motel room).
Similarly, in DeMontmorency v. State, 401 So.2d 858 (Fla. 1st DCA 1981), approved, 464 So.2d 1201 (Fla. 1985), the First District, consistent with the decision in United States v. Dunn, noted that the presence of a fence or enclosure may not be determinative of a structure's curtilage under search and seizure law. The court held that a crop of marijuana and the defendant's house trailer, which were located on a fenced parcel of land, were not part of the curtilage of the defendant's home because of their lack of proximity to the home. Id. at 862-63. The court reasoned that the marijuana "was not located in an area falling within the `curtilage' as traditionally defined for the reason that the marijuana was `disassociated from any purpose reasonably connected with the conduct of affairs incident to the normal use and occupancy of the dwelling.'" Id. at 863 (citation omitted).
In a search and seizure context, the Second District has also defined curtilage without any reference to an enclosure or fenced-in area in holding that curtilage is "the ground and buildings immediately surrounding a dwelling and customarily used in connection with it." A.E.R. v. State, 464 So.2d 152, 153 (Fla. 2d DCA 1985). Cf. State v. Sarantopoulos, 604 So.2d 551 (Fla. 2nd DCA 1992) (defendant's fenced yard is within curtilage of home), approved, 629 So.2d 121 (Fla. 1993).
In a burglary context, however, the First District has quoted with approval the current jury instruction for "structure" which interprets curtilage to mean the enclosed grounds immediately surrounding the building. Baker v. State, 622 So.2d 1333, 1335 (Fla. 1st DCA 1993), approved, 636 So.2d 1342 (Fla. 1994). The "backyard" curtilage alleged to *1044 have been violated in Baker was surrounded by a chain link fence, and the jury that convicted Baker was given the standard jury instruction providing for an enclosure.[11] Further, as noted in the opinion under review, other Florida decisions also support the enclosure requirement:
This conclusion that proof of enclosure is necessary is also consistent with the facts of prior Florida cases upholding burglary convictions premised on the theory that the curtilage was entered. See State v. Rolle, 577 So.2d 997 (Fla. 4th DCA 1991) (defendant's truck went through gate and backed in through garage door); T.J.T. v. State, 460 So.2d 508 (Fla. 3rd DCA 1984) (defendant attempted to remove window from home with fenced-in yard); Tobler v. State, 371 So.2d 1043 (Fla. 1st DCA), cert. denied, 376 So.2d 76 (Fla. 1979) (defendant entered premises after cutting lock off gate to a fence surrounding business); DeGeorge v. State, 358 So.2d 217 (Fla. 4th DCA 1978) (defendant removed motors from boats parked on paved area of premises partially enclosed by a fence and a brick wall); Greer v. State, 354 So.2d 952 (Fla. 3rd DCA 1978) (defendant climbed over a six-foot wall into enclosed parking area surrounding business structure.) But see J.E.S. v. State, 453 So.2d 168 (Fla. 1st DCA 1984) (defendant stole bicycle from driveway, which was determined to be within the curtilage, but opinion does not indicate whether driveway enclosed).
Hamilton, 645 So.2d at 559 (footnote omitted); see also State v. Musselwhite, 402 So.2d 1235 (Fla. 2d DCA) (holding that driveway to one's residence is within curtilage of that property), review dismissed, 408 So.2d 1094 (Fla. 1981).
In a recent case the Fourth District reversed a defendant's burglary conviction because "[t]here was no proof that the defendant entered the school cafeteria nor any curtilage, the building not having been enclosed in any manner." Bain v. State, 650 So.2d 83, 84 (Fla. 4th DCA 1995), review granted, 659 So.2d 272 (Fla. 1995). For support the court cited, inter alia, the standard jury instructions and the district court decision in the case sub judice.

STRICT CONSTRUCTION
We simply cannot determine whether the legislature intended to adopt the common law definition of curtilage which includes some concept of enclosure, or to eliminate the requirement of enclosure as many jurisdictions have. In any case, as we have seen, curtilage, at common law, was "not a word of exact meaning," Joel Prentiss Bishop, Bishop on Statutory Crimes § 286, at 312 (Marion C. Early ed., 3d ed. 1901), and "there [were] no definable dimensions of grounds which it require[d]." Id. at 313.
In considering the various ways "curtilage" has been treated, the defendant reminds us that we are obligated to strictly construe the term "curtilage" as used in the burglary statute narrowly in his favor. See Carawan v. State, 515 So.2d 161, 166 (Fla. 1987) (holding that criminal statutes are to be construed strictly in favor of person against whom penalty is to be imposed), superseded by statute on other grounds as stated in State v. Smith, 547 So.2d 613 (Fla. 1989). Indeed, the legislature has provided in section 775.021(1), Florida Statutes 1993:
The provisions of this code and offenses defined by other statutes shall be strictly construed; when the language is susceptible of differing constructions, it shall be construed most favorably to the accused.
We conclude that such a construction here requires us to carry forward the common law requirement of some form of an enclosure in order for the area surrounding a residence to be considered part of the "curtilage" as referred to in the burglary statute. Despite the uncertainty in the case law, and the way some courts have somewhat deviated from the common law use of curtilage, a review of the common law, and of the Florida cases, *1045 supports the enclosure requirement contained in the standard jury instructions.
To hold otherwise would be to bring the statute perilously close to violating the constitutional due process bar against vagueness and uncertainty.[12] The district court opinion expressed another valid concern when it noted:
Moreover, to construe this term in any other fashion would run afoul of another basic tenet of statutory construction that compels a court to interpret a statute so as to avoid a construction that would result in unreasonable, harsh, or absurd consequences. E.g., City of St. Petersburg v. Siebold, 48 So.2d 291, 294 (Fla. 1950). That is, to define curtilage for purposes of the burglary statute so as to eliminate the requirement of enclosure would mean that a person who entered an open yard surrounding a dwelling in broad daylight, without the homeowner's consent, with the intent to take a piece of fruit from a tree located in the yard, would be guilty of a second-degree felony. § 810.02(3). If the homeowner then confronted this person and became the victim of a simple assault or battery, the offending person would be guilty of a first-degree felony punishable by a term of years not exceeding life. § 810.02(2)(a). We cannot perceive that the legislature intended the burglary statute to be applied to produce such harsh results.
Hamilton, 645 So.2d at 560-561 (footnote omitted). It is especially important, of course, that criminal statutes clearly define the conduct prohibited. Indeed, one writer has expressed concerns as to the constitutionality of the statute because of its use of the term without a precise definition:
Prior burglary legislation recognized this common law usage of the term "curtilage." The legislature previously limited burglary to "buildings within the curtilage of a dwelling house." Unlike the usage under the instant statute, the term curtilage was never used in the past as an entity apart from its relation to a dwelling. Apart from the common law, and prior legislative usage, the common meaning of the term curtilage directly relates to a dwelling. For example, Webster's defines curtilage as being: "A yard within a fence surrounding a house."
Since neither common law construction, prior legislative usage nor common references aid in interpreting the phrase "together with the curtilage thereof" in the present statute, a person of ordinary intelligence cannot be expected to know what conduct is proscribed.
Jerome C. Latimer, Burglary Is For Buildings, Or Is It? Protected Structures and Conveyances Under Florida's Present Burglary Statute, 9 Stetson L.Rev. 347, 350-51 (1980) (footnotes omitted); see also Baker v. State, 622 So.2d 1333, 1338 (Fla. 1st DCA 1993) (Ervin, J., dissenting) (expressing same concern with constitutionality of statute).
We acknowledge that the legislature is vested with full authority to amend the burglary statute and to give curtilage any definition believed appropriate, including eliminating the requirement of an enclosure for certain areas, as has been done in other jurisdictions. Just as the legislature has redefined the common-law crime of burglary, it may redefine the concept of curtilage. That is the prerogative of the legislature. See Art. III, § 1, Fla. Const. However, we simply do not have the prerogative to redefine curtilage as it was treated under the common law, and, in effect, judicially amend the burglary statute ourselves.

STANDARD JURY INSTRUCTIONS
We also concur with the district court's observation that the trial court erred in deviating from the standard instruction without explanation:
We conclude that the trial court erred in giving this modified instruction without stating "on the record or in a separate order the respect in which [it found] the standard form erroneous or inadequate and the legal basis of [its] finding." Fla. R.Crim.P. 3.985. A trial court's obligation in that regard is mandatory. Moody v. *1046 State, 359 So.2d 557, 560 (Fla. 4th DCA 1978). We also conclude that the modified instruction did not completely reflect the law of Florida regarding the definition of curtilage.
Hamilton, 645 So.2d at 558. It is important that trial courts, which retain the critical role of determining the appropriate law upon which the jury should be instructed, indicate the basis of any disagreement with the standard jury instructions. The committees that draft standard instructions work hard in developing these restatements of Florida law in clear and straightforward language to assist the courts in carrying out their responsibility to explain the law to citizen jurors. Confidence in the use of these instructions is undermined when their use is rejected without explanation. On the other hand, trial judges perform an important service to the law when they detect some problem with a standard instruction or otherwise explain why its use is inappropriate in a particular case.[13]

CONCLUSION
Since it is undisputed in this case that the victim's yard was not enclosed in any manner other than "several unevenly spaced trees," we must conclude that the evidence does not support the defendant's conviction for burglary of the dwelling, or his conviction for second-degree felony murder, predicated upon the burglary. See Mahaun v. State, 377 So.2d 1158, 1161 (Fla. 1979).
In accordance with the above, we answer the certified question in the affirmative. We approve the district court's holding that the jury instruction was erroneous. We quash the district court's decision only with respect to its affirmance of the trial court's denial of the motion for judgment of acquittal on the charges of burglary of a dwelling and second-degree felony murder. We remand for further proceedings consistent herewith.
It is so ordered.
GRIMES, C.J., and OVERTON, SHAW, KOGAN, HARDING and WELLS, JJ., concur.
NOTES
[1] These facts are taken substantially from the district court opinion. See Hamilton, 645 So.2d at 557-558.
[2] The district court opinion noted that the only evidence tending to establish that the backyard was enclosed was a photograph depicting the boat "in a semi-secluded area adjacent to the home surrounded by several unevenly spaced trees." Hamilton, 645 So.2d at 557.
[3] Hamilton confessed that he and Thomas had cut the phone line.
[4] This definition was based on the opinion in A.E.R. v. State, 464 So.2d 152, 153 (Fla. 2d DCA), review denied, 472 So.2d 1180 (Fla.), cert. denied, 474 U.S. 1011, 106 S.Ct. 541, 88 L.Ed.2d 471 (1985).
[5] Florida's current statute defines burglary as the "entering or remaining in a structure or conveyance with the intent to commit an offense therein, unless the premises are at the time open to the public or the defendant is licensed or invited to enter or remain." § 810.02(1), Fla. Stat. (1991). This is the statute at issue in this case.
[6] See, e.g., Black's Law Dictionary 346 (5th ed. 1979) (Curtilage is "[t]he inclosed space of ground and buildings immediately surrounding a dwellinghouse."); Ballentine's Law Dictionary 300 (1969) (Curtilage is "[t]he open space situated within a common enclosure belonging to a dwelling house."); 1 Bouvier's Law Dictionary 741 (8th ed. 1914) (Curtilage is "[t]he enclosed spaced immediately surrounding a dwellinghouse, contained within the same enclosure.").
[7] See, e.g., Black's Law Dictionary 346 (5th ed. 1979) (Curtilage is "[a] small piece of land, not necessarily inclosed, around the dwelling house, and generally includes the buildings used for domestic purposes in the conduct of family affairs.").
[8] See, e.g., Black's Law Dictionary 346 (5th ed. 1979) (Curtilage is "[a] courtyard or the space of ground adjoining the dwelling house necessary and convenient and habitually used for family purposes and the carrying on of domestic employments."); Waters' Dictionary of Florida Law 174 (1991) ("Under the law relevant to burglaries, [curtilage is] a term that includes the area surrounding any building, not just a dwelling.").
[9] See, e.g., 13 Am.Jur.2d Burglary § 5 (1964) ("The test of whether the place entered is a part of the dwelling house is no longer a matter of inclosure or a matter of fencing."); 12A C.J.S. Burglary § 30 (1980) ("An outhouse is within the curtilage ... if it is parcel of, or appurtenant to, the dwelling and connected therewith ... whether there is any actual common inclosure or not.") (footnotes omitted); Bishop, supra, § 286 ("Under the unwritten law, to render an out-building a part of the dwelling-house there need be no common inclosure; though, where there is none, the question is more difficult.") (footnote omitted); McClain, supra, at § 497 (stating that nature of building and proximity to dwelling is now relevant question with respect to determining whether building is in curtilage); Parnell, supra, at 837 ("However, not all of the cases, particularly in the American jurisdictions, take the view that to be `within the curtilage' an outbuilding had to be within the same inclosure as the dwelling house.").
[10] This definition was not part of the Maine court's holding. In fact, the Maine court held that curtilage "need not be separated from other lands by fence." Shaw, 31 Me. at 527.
[11] The district courts have also, consistent with the current burglary statute, extended the application of curtilage to the area surrounding any building, not just a dwelling, for purposes of defining burglary. See Sealey v. State, 379 So.2d 430 (Fla. 2d DCA 1980); Tobler v. State, 371 So.2d 1043 (Fla. 1st DCA), cert. denied, 376 So.2d 76 (Fla. 1979); Greer v. State, 354 So.2d 952, 953 (Fla. 3d DCA 1978); DeGeorge v. State, 358 So.2d 217, 220 (Fla. 4th DCA 1978).
[12] It would also be unworkable, in our view, to require a court and jury to apply a constitutional privacy analysis to determine the extent of the "curtilage" every time a burglary was charged.
[13] Of course, if the trial court's instruction to the jury had been correct, we would find any error in this regard harmless and not a valid independent basis for reversal.