MARSTILLER, J.
 

 Terrell Dubose (“Appellant”) was found guilty of first degree felony murder, burglary being the supporting felony, and shooting or throwing deadly missiles. The jury based its verdict on evidence showing that Appellant and his two brothers entered the fenced yard of a house without consent, collectively fired twenty-nine bullets into the wood-frame house, and killed an eight-year-old girl. (She died trying to shield her two younger cousins from the bullets.) The shooting was in retaliation for an earlier altercation between one of Appellant’s brothers and a resident of the house.
 

 Appellant seeks reversal of his convictions for the following reasons. First, he asserts that section 810.02, Florida Statutes (2007), the burglary statute, is vague and unconstitutional as applied to him because it does not define the term “curtilage,” and the jury did not understand the meaning of the term. Appellant failed to assert below. Although claims that a statute is facially unconstitutional can be raised for the first time on appeal, see generally
 
 Westerheide v. State,
 
 831 So.2d 93, 105 (Fla.2002), the same is not true for as-applied challenges.
 
 See Trushin v. State,
 
 425 So.2d 1126, 1129-30 (Fla.1982);
 
 Lamore v. State,
 
 983 So.2d 665, 669 (Fla. 5th DCA 2008);
 
 Groover v. State,
 
 632 So.2d 691, 692 (Fla. 1st DCA 1994). Because Appellant did not present this issue to the trial court, he failed to preserve it for appellate review.
 

 Second, Appellant claims he was entitled to judgment of acquittal on felony murder because he could not have committed burglary where the yard of the dwelling at issue was not fully enclosed. We disagree. One commits burglary in Florida by “entering or remaining in a dwelling, a structure, or a conveyance with the intent to commit an offense therein.... ”
 
 *385
 
 § 810.02(1), Fla. Stat. (2007). The terms “dwelling” and “structure” are defined to include “the curtilage thereof.” §§ 810.011(1), (2), Fla. Stat. (2007). The area surrounding a dwelling or structure must lie within “some form of an enclosure” to be considered part of the curti-lage.
 
 State v. Hamilton,
 
 660 So.2d 1038, 1044-45 (Fla.1995). In this case, the yard of the home Appellant and his brothers fired upon had a chain link fence around it, with an opening in front for the driveway. This court recently held that the enclosure “need not be eontinuous[,] and an ungated opening for ingress and egress does not preclude a determination that the yard is included in the curtilage of the house.”
 
 Jacobs v. State,
 
 41 So.3d 1004, 1006 (Fla. 1st DCA 2010). The residential yard in
 
 Jacobs
 
 was fenced on three sides, with a low-walled stoop in front, and an opening for the driveway. This, we held, constituted “some form of enclosure” as required in
 
 Hamilton. Jacobs,
 
 41 So.3d at 1006.
 
 See also Chambers v. State,
 
 700 So.2d 441, 441-42 (Fla. 4th DCA 1997) (holding that wood and chain link fencing surrounding residential yard, but with ten to fifteen foot gap to accommodate owner’s boat and trailer, satisfied “some form of enclosure” requirement). The fencing around the residential yard in the instant case similarly satisfies the enclosure requirement in
 
 Hamilton.
 

 Finally, Appellant argues that the trial court abused its discretion in limiting cross-examination of prosecution witness Maxie Wilson about crimes the State may not have charged him with in return for his testimony. Wilson, a drug dealer and cousin of Appellant and his brothers, drove the men to the scene of the shooting, supplied them with guns, drove them away from the scene, and helped them hide from law enforcement for several days after the shooting. Wilson testified that a few days after Appellant and his brothers were found and arrested, he too was arrested, but on a revived cocaine trafficking charge. With the help of legal counsel, Wilson negotiated a deal under which he pled guilty to cocaine trafficking, agreed to testify against Appellant and his brothers, and received immunity from prosecution for murder and from federal prosecution for drug trafficking. He mentioned no other offenses included in the grant of immunity.
 

 Appellant’s counsel began cross-examination by asking Wilson whether, when police arrested him on the cocaine trafficking charge, there was a gun in his car. Wilson answered affirmatively and testified that he was not charged with firearm possession by a convicted felon. The following exchange then occurred:
 

 Q. Okay. Where was the gun in the car?
 

 A. I believe it was under the hood.
 

 Q. Under the hood?
 

 A. Yes.
 

 Q. And how did it get there? Do you know?
 

 A. No, sir.
 

 Q. You don’t know how the gun got there?
 

 A. No, sir.
 

 Q. You’re driving around in a car with—
 

 MS. KITE [prosecutor]: Your Honor, I’m going to have to object. I think we need to approach side-bar.
 

 The prosecutor argued that while the nature of uncharged crimes or dropped charges may be relevant in impeaching Wilson, the underlying facts were not relevant. Defense counsel responded that it is appropriate to get into the facts because in addition to murder and federal drug trafficking, there may be other charges Wilson escaped as reward for testifying for the State. The trial court sustained the prose
 
 *386
 
 cutor’s objection and told Appellant’s counsel he could only ask Wilson whether he was aware of any other potential charges against him arising from his arrest for drug trafficking.
 

 We conclude that the trial court ruled correctly. “ ‘When charges are pending against a prosecution witness at the time he [or she] testifies, the defense is entitled to bring this fact to the jury’s attention to show bias, motive, or self-interest.’ ”
 
 Coolen v. State,
 
 696 So.2d 738, 743 (Fla.1997) (quoting
 
 Torres-Arboledo v. State,
 
 524 So.2d 403, 408 (Fla.),
 
 cert. denied,
 
 488 U.S. 901, 109 S.Ct. 250, 102 L.Ed.2d 239 (1988)). “How far the inquiry can proceed into the details of the matter is within the court’s discretion.”
 
 Id.
 
 Here, the cross-examination did not concern the facts giving rise to Wilson’s drug trafficking charge. Rather, Appellant’s counsel admitted the line of questioning was intended to reveal criminal conduct by Wilson for which he was not charged, even though Wilson only testified to negotiating his way out of a murder charge and federal prosecution for drug trafficking. Absent testimony from Wilson indicating that other charges were discussed when he negotiated his plea deal, any evidence that he could have been charged with other offenses was simply speculative and irrelevant to show bias, motive or self-interest. The trial court correctly prohibited Appellant’s counsel from pursuing this line of questioning.
 

 AFFIRMED.
 

 HAWKES and RAY, JJ., concur.