SWANSON, J.
 

 Harley Colbert appeals his judgment of conviction and sentence, arguing the trial court erred in denying his motion to dismiss the information charging him with burglary of a dwelling under section 810.02(3)(b), Florida Statutes (2010). Colbert contends the area from which he stole a bicycle was not an “attached porch” and does not fall within the definition of a “dwelling” as provided in section 810.011(2), Florida Statutes (2010). We agree and reverse.
 

 The victim, Alejandro Rojas, resided in a two-story townhouse. Protruding from underneath the townhouse’s front door was a concrete pad that connected to a front walkway. One side of the concrete pad was open to the front yard, while the other side abutted a layer of mulch. On the opposite side of the mulch was the exterior wall of the townhouse’s garage. The concrete pad and mulch were partially covered by the eave of the garage and the townhouse’s second floor balcony, which was not supported by posts. The concrete pad and mulch were both visually and physically open to the street.
 

 On July 2, 2010, Rojas’s bicycle was sitting on the mulch between the concrete pad and the wall of the garage. At some point, Rojas saw Colbert walking down his driveway with the bicycle. Rojas detained Colbert until law enforcement officers arrived. Colbert was subsequently charged with burglary of a dwelling.
 

 Section 810.011(2) defines “dwelling” to mean:
 

 a building or conveyance of any kind,
 
 including any attached porch,
 
 whether such building or conveyance is temporary or permanent, mobile or immobile, which has a roof over it and is designed to be occupied by people lodging therein at night, together with the curtilage thereof.
 

 (Emphasis added.) The sole issue on appeal is whether the area from which the bicycle was taken was an “attached porch.” While section 810.011 does not define the term, a review of how the subject has been treated by the courts of this state, as well as the relationship between the terms “attached porch” and “dwelling” in the statute, demonstrate what an “attached porch” is
 
 not.
 
 This area, which was both visually and physically open to the general public, is not a logical extension of one’s dwelling in a way that comports with the concept of an “attached porch.”
 

 In
 
 Weber v. State,
 
 776 So.2d 1001 (Fla. 5th DCA 2001), the Fifth District held an unenclosed cement slab abutting the rear of the victim’s first floor apartment was an “attached porch.” The slab was covered by the balcony of the upstairs apartment, which was supported by posts, and contained a barbecue grill and boxing bag, among other personal items.
 
 Id.
 
 at 1002-03. In
 
 Small v. State,
 
 710 So.2d 591 (Fla. 4th DCA 1998), the Fourth District stated in dicta that a carport with no walls enclos
 
 *113
 
 ing it except for a single wall shared with the house would qualify as an “attached porch.” Finally, in
 
 Blanchard v. State,
 
 767 So.2d 573 (Fla. 5th DCA 2000), the Fifth District held that the glass-enclosed front porch of a duplex, where the victim kept plants and furniture, though it had an inoperative doorbell on the outside, was part of the dwelling rather than a common area open to the public.
 
 [1]
 

 The facts herein are distinguishable from the foregoing cases. Notably, those cases dealt with areas where common notions of security and privacy associated with a dwelling were present. In contrast, the area in the instant case was located in the front, rather than the rear, of the townhouse and maintained neither posts nor a sufficient enclosure to visually indicate it was an extension of, rather than just near, the townhouse. The area’s lack of visual demarcation is further demonstrated by the fact that it was only partially covered by the balcony and eave of the garage. Moreover, there was no personal property within the area suggesting it was a logical extension of the dwelling. Lastly, unlike a carport, this area was open to unknown, uninvited people. In short, the area where the bicycle was parked was not an “attached porch” as contemplated in section 810.011(2).
 
 [2]
 

 We construe the term “attached porch” narrowly in the accused’s favor.
 
 See State v. Hamilton,
 
 660 So.2d 1038, 1044 (Fla.1995). The state has argued in favor of a broader interpretation for the term. The facts herein do not warrant an expansive definition and the state’s argument is rejected. In determining how narrowly to construe the term, the line between those areas falling within its reach, and those falling outside of it, are drawn logically. The structure of section 810.011(2) is significant in this regard, because it ensures that any area deemed an “attached porch” is part of the “dwelling.” This reflects the legislature’s intent to accord to an “attached porch” the same protection for one’s right of habitation as is accorded a “dwelling.” Indeed, the burglary statute “finds its theoretical basis and origin in the protection of a person’s right of habitation.”
 
 Hamilton,
 
 660 So.2d at 1043.
 

 In the instant case, the area outside of Rojas’s front door was both physically and visually open to the general public.
 
 [3]
 
 Consequently, the area from which the bicycle was taken does not comport with the concept of an “attached porch” under the statute.
 

 Based on the foregoing analysis we REVERSE Colbert’s judgment of conviction and sentence.
 

 BENTON, C.J., and PADOVANO, J., concur.
 

 [1]
 

 . In agreeing with the state, the Fifth District acknowledged the state’s point that the statutory definition of "dwelling” would also include "any attached porch.”
 
 Blanchard,
 
 767 So.2d at 574.
 

 [2]
 

 . This Court has also considered the opinion in
 
 Ferrara v. State,
 
 19 So.3d 1033 (Fla. 5th DCA 2009), in which the Fifth District held that an unenclosed “covered porch at the front of the residence” was an "attached porch.” However, with no other factual description of the porch present in the court's opinion we cannot fairly compare or contrast it to the facts in the underlying case.
 

 [3]
 

 .In addition to being open to individuals like salespeople and visitors, photographic exhibits in the record show that the area was open to mail-carriers because the townhouse's mailbox appears to be affixed on the exterior garage wall, just above where the bicycle was parked.