354 So.2d 952 (1978)
R.C. GREER, Appellant,
v.
The STATE of Florida, Appellee.
No. 76-1772.
District Court of Appeal of Florida, Third District.
February 7, 1978.
*953 Bennett H. Brummer, Public Defender and Paul Morris, Asst. Public Defender and Thomas Wills, Sp. Asst. Public Defender, for appellant.
Robert L. Shevin, Atty. Gen. and Joel D. Rosenblatt, Asst. Atty. Gen. and Lonworth Butler, Legal Intern, for appellee.
Before PEARSON, HENDRY and NATHAN, JJ.
HENDRY, Judge.
Appellant was charged with and convicted of burglary, in violation of Section 810.02, Florida Statutes (1975). He appeals his conviction and sentence.
The evidence showed that appellant was seen as he climbed over a six-foot wall into the enclosed parking area which surrounds the business structure in which Courtesy Ford, Inc. conducts its operations. Upon arrival, police found appellant hiding under a van in the parking area. There was no evidence of actual entry into the building itself.
The primary point for our consideration is whether the trial court erred in denying appellant's motion for judgment of acquittal in light of Sections 810.02 and 810.011(1), Florida Statutes (1975). More specifically, appellant contends that the term "curtilage" has meaningful applications when associated only with a dwelling and can not be applied sub judice, where the information charged and the evidence showed only that appellant had unlawfully entered the parking area of a commercial establishment with the intent to commit an offense therein.
In light of the clear language of Sections 810.02 and 810.011, Florida Statutes (1975), we must reject appellant's contention. Section 810.02 provides:
"(1) `Burglary' means entering or remaining in a structure or a conveyance with the intent to commit an offense therein, unless the premises are at the time open to the public or the defendant is licensed or invited to enter or remain." [Emphasis added.]
Pursuant to Section 810.011, "structure" is defined as:
"any building of any kind, either temporary or permanent, which has a roof over it, together with the curtilage thereof." [Emphasis added.]
Accordingly, the unlawful entry of appellant into the parking lot (curtilage) surrounding the business structure with intent to commit an offense (larceny) was a burglary, notwithstanding the fact that appellant did not enter the structure and the curtilage was of a business property and not a dwelling.
The other point raised by appellant is addressed to an alleged "fatal variance" between the charge stated in the information and the proof adduced at trial. After considering this point, we find it to be without merit. Fitzgerald v. State, 227 So.2d 45 (Fla. 3d DCA 1969).
Therefore, the judgment and sentence are affirmed.
Affirmed.
PEARSON, Judge (dissenting).
The opinion of the majority appears to me to be a noble attempt to remedy a faulty statute. While I cannot quarrel with the public policy involved or the wholesome effect of the holding, I must, in intellectual honesty, point out that there is no way that the legal term "curtilage"[1] can be interpreted *954 to mean an industrial plant surrounded by a wall. See Powelson v. Lake Placid Co., 281 App.Div. 1054, 121 N.Y.S.2d 139 (1953); and Turknett v. State, 254 P. 985 (Okl.Cr. 1927).
NOTES
[1] its most comprehensive and proper legal signification, it [curtilage] includes all that space of ground and buildings thereon which is usually inclosed within the general fence immediately surrounding a principal messuage [dwelling house] and outbuildings, and yard closely adjoining to a dwelling-house, but it may be large enough for cattle to be levant and couchant therein. 1 Chit. Gen.Pr. 175." Black's Law Dictionary (4th Ed. 1957).
"A small court, yard, garth, or piece of ground attached to a dwelling-house, and forming one enclosure with it, or so regarded by the law; the area attached to and containing a dwelling-house and its out-buildings. Now mostly a legal or formal term, but in popular use in the south-west, where it is pronounced, and often written, courtledge." Oxford English Dictionary, vol. II (1933).