731 So.2d 728 (1999)
Eric Ramon MEJIAS, Appellant,
v.
The STATE of Florida, Appellee.
No. 97-2266.
District Court of Appeal of Florida, Third District.
March 24, 1999.
Rehearing Denied June 9, 1999.
Eric Ramon Mejias, in proper person.
Robert A. Butterworth, Attorney General, and Paulette R. Taylor, Assistant Attorney General, for appellee.
Before NESBITT, COPE, and FLETCHER, JJ.
NESBITT, J.
Eric Ramon Mejias appeals the trial court's denial of his postconviction motion challenging his 1995 nolo contendere plea to burglary. Upon this Court's order, the trial court conducted an evidentiary hearing on May 28, 1998, to determine if a factual basis existed to support Mejias's 1995 pleas to burglary and possession of burglary tools. The court set aside Mejias's conviction on the burglary tools charge, on the authority of Green v. State, *729 604 So.2d 471 (Fla.1992), but found that his plea on the burglary charge was supported by the evidence. We disagree, and hereby reverse.
The scenario which produced the burglary charge against Mejias involved the following: Mejias was discovered at night, in the parking area of an industrial park, adjacent to Tri-Star Industries, which was then his place of employment. A window air-conditioning unit at Tri-Star had been pushed into the building somewhat, setting off an alarm to which the police responded. Upon arrival, the police found Mejias hiding under a truck in the parking area. He had gloves and a diagram of Tri-Star's premises on his person.
Mejias challenged the factual basis of the burglary plea on two independent theories (1) that because a pedestrian gate into the industrial park was open, he did not enter an area "not open to the public"; and (2) that because the parking area in which he was discovered was common to all businesses in the industrial park, that area could not be considered the curtilage of Tri-Star. Although there was conflicting evidence concerning whether or not the pedestrian gate was open on the night in question, the trial judge found that the gate was closed. Thus, as the area was not then open to the public, Mejias loses on his first theory.
However, Mejias's second theory has merit. The layout of this particular industrial park was not in dispute among the witnesses. The intended target of the purported burglary, Tri-Star, was one of many warehouse businesses located within the industrial park's two buildings. The entire industrial park is enclosed on all sides by either the building itself or a fence. Significantly, the businesses are not separated from each other within the fenced compound; they are housed in adjacent warehouses in the same building. Mejias was discovered within the fenced compound, in the common parking area of all the businesses, under a truck parked near the Tri-Star warehouse. Mejias's argument that, given these facts, he was not on the curtilage of Tri-Starand, therefore, not within the burglary statuteis supported by a recent first district case.
In Henry v. State, 707 So.2d 370 (Fla. 1st DCA 1998), the defendant had entered a fenced-in compound with five sheds inside of it and had stolen a tool from one of the sheds. The state charged him with burglary not only with regard to the shed from which he had stolen the tool, but also with regard to the other sheds, because he had entered their curtilage. The second district reversed the latter burglary conviction, stating:
[L]and surrounding a building other than a dwelling house, although inside a fenced compound, cannot be the "curtilage" of a structure not fenced off ("by some form of enclosure") from other structures within the compound.
Henry, 707 So.2d at 373. Mejias argues, and we agree, that despite some factual differences, the instant case is indistinguishable from Henry on principle. Here, Mejias entered land surrounding a building inside a fenced industrial park compound, and the Tri-Star warehouse was not fenced off from the other businesses within the compound.[1] Hence, per the Henry decision, the area Mejias entered was not the curtilage of a structure.[2]
*730 In the instant situation, conviction under the burglary statute required proof of these elements: (1) the defendant entered or remained in a structure; (2) with the intent to commit an offense therein; and (3) the premises were not at the time open to the public, and the defendant had no license to enter or remain. See § 810.02(1), Fla. Stat. (1995). The term "structure" includes, by definition, "the curtilage thereof." See § 810.011(1), Fla. Stat. (1995). Here, the first element was not met, as Mejias did not enter either a structure or its curtilage. Thus, Mejias could not have committed burglary. As in Henry, where the defendant was not guilty of burglary of the unentered sheds by his entry into the fenced compound, likewise Mejias was not guilty of burglary of the unentered Tri-Star warehouse by his entry into the fenced compound of this industrial park. Mejias's nolo contendere plea was, therefore, without a factual basis.
In our view, based on the foregoing discussion, the most the evidence below showed was a factual basis for attempted burglary[3] or for trespassing on property other than a structure.[4] The circumstantial evidence here, while not amounting to burglary, was strongly indicative of the imminent commission of a burglary. In effect, we believe that the evidence showed that Mejias was likely intercepted before he could commit the burglaryhe had set off Tri-Star's alarm system but had not yet entered the building. Other factors Mejias's presence on the premises of the industrial park in the middle of the night, his hiding under a truck, the gloves and map in Mejias's possession, and the airconditioning unit of the business being pushed inall support a scenario of an interrupted plan to burglarize the Tri-Star warehouse.
We reverse Mejias's conviction for burglary, as we find his plea was without a factual basis, and remand for further proceedings consistent with this opinion. The trial court's vacation of Mejias's conviction on possession of burglary tools is affirmed.
Affirmed in part, reversed in part, and remanded.
NESBITT and FLETCHER, JJ., concur.
COPE, J. (dissenting).
I would affirm the denial of postconviction relief.

I.
Based on this court's decision in Greer v. State, 354 So.2d 952 (Fla. 3d DCA 1978), there is a factual basis for defendant-appellant Mejias' plea of nolo contendere to the offense of burglary. In Greer, the defendant climbed over a six-foot wall which surrounded a Ford automobile dealership. See id. The police found him hiding under a van in the parking area. See id. There was no evidence that defendant had actually entered the dealership building itself. See id. This court held that the facts amounted to a burglary committed by reason of the unlawful entry of the defendant into the curtilage of the business structure. See id.
The same logic applies in this case. Here the facts show that the defendant entered the fenced enclosure of the industrial park. Within the enclosure were two buildings housing multiple businesses. The defendant inadvertently set off the burglar alarm by pushing a window airconditioning unit into the building, evidently intending to dislodge it and enter through the opening thus created. Defendant was hiding under a truck in the parking area when the police arrived.
Under the reasoning of the majority opinion, this would amount to a burglary *731 only if the fenced enclosure were occupied by a single building, but does not amount to a burglary in this case because the enclosure housed two buildings. There is no reasonable basis for drawing such a distinction.
The majority opinion relies on the First District decision in Henry v. State, 707 So.2d 370 (Fla. 1st DCA 1998). There is language in Henry which supports the majority position in this case. The Henry court said that "land surrounding a building other than a dwelling house, although inside a fenced compound, cannot be the `curtilage' of a structure not fenced off (`by some form of enclosure') from other structures within the compound." Id. at 373 (citations omitted). That language was, however, unnecessary to the decision.
In Henry, there were five construction sheds within a single fence. They were "fenced off from the world outside, but not from each other." Id. The defendant was found carrying a concrete saw near the construction site and confessed to have taken it. See id. at 371. To do so, defendant had entered the fenced area and the construction shed where the saw was kept. See id. There was no evidence showing that defendant had entered any other structure or that he had entered the compound more than once. See id.
At trial in Henry, defendant was convicted of two counts of burglary. One count was for entry of the construction shed where he stole the saw. The other conviction was obtained on the theory that while walking inside the fenced area, the defendant had entered the curtilage of the other four construction sheds. The First District held that one conviction was enough.
Since entry into the curtilage is considered to be entry to the building itself, see Baker v. State, 636 So.2d 1342, 1344 (Fla. 1994), it was plain in Henry that there had been a single wrong whereby Henry had entered the curtilage and construction shed in order to obtain the concrete saw. As a matter of common sense, entry into a multi-building fenced compound should not be treated as a burglary of every structure in the compound. Thus, the Henry court reached the correct result.
However, it was entirely unnecessary to the decision for the Henry court to say that there can be no curtilage-based burglary of a multi-building fenced compound, unless each building within the compound has its own separate fence. As stated in Baker, "the legislature has so thoroughly modified the burglary statute the present statute must be said to completely abrogate and supersede the common law crime of burglary." 636 So.2d at 1344. The burglary statute now provides protection to the curtilage of commercial structures as well as dwellings. See id. The statute should be construed so it is applied in a logical and reasonably consistent way. Given that the burglary statute now protects the curtilage of commercial buildings, it should make no difference whether there is a single building, or multiple buildings, within the fenced enclosure. The correct analysis would be to say that a single entry can only give rise to a single burglary count, unless there is evidence of entry into more than one structure.
For the stated reasons, there was an adequate factual basis in the present case, and the order denying postconviction relief should be affirmed.

II.
Alternatively, I would affirm the order denying postconviction relief because, regardless of the analysis of the burglary statute, there is no prejudice or manifest injustice in this case. See Williams v. State, 316 So.2d 267, 275 (Fla.1975).
Under the majority opinion, the facts of the present case amounted to an attempted burglary, but not a completed burglary. The defendant came into the fenced area outside TriStar Industries and pushed the window air-conditioning unit into the building in an effort to gain entry, when the burglar alarm went off. The police arrived *732 and found defendant hiding under a truck in the parking area. He had gloves and a diagram of the Tri-Star business on his person.
If entry of the curtilage is disregarded, then the facts clearly amount to an attempted burglary. Under Florida law, an attempted burglary and a completed burglary of an unoccupied structure are both third-degree felonies. See §§ 777.04(4)(e), 810.02(3), Fla. Stat. (1993).
When the plea was taken, the following occurred:
THE COURT: It is my understanding, through your attorney, Miss Newman, that you want to admit to violating probation in case number 91-11938, and plead guilty to the burglary and burglary tools in case number 94-38113B;
is that correct?
THE DEFENDANT: That's correct. Isn't it an attempted burglary?

THE COURT: Let me see the information in 94-38113B.
THE CLERK: It's burglary.
THE COURT: It alleges on November 8, of last year at 30101 Northeast 15th Court, that you entered this building, or the area around the building, without the consent of the person.
Is that what you are pleading guilty to?
THE DEFENDANT: Entering a building?
THE COURT:or the curtilage area, which means the area around
It doesn't mean you have to go inside. If there's an area around the building, a curtilage area, that's what you're admitting to.
Are you pleading guilty freely and voluntarily?
THE DEFENDANT: Yeah.
THE COURT: No one is forcing you to do so?
THE DEFENDANT: No.
(Emphasis added).
The colloquy clearly reveals that the defendantwho had already told the court that he wished to enter into the negotiated pleainitially believed that he was pleading to the offense of attempted burglary, rather than burglary. When the court explained that the actual charge was burglary, the defendant pled to that charge. Plainly the defendant was fully prepared to enter the plea, regardless of whether it was characterized as burglary or attempted burglary. The plea was a favorable one, because the defendant faced up to twenty-seven years under the sentencing guidelines.[*]
Since (1) the defendant clearly was prepared to plead no contest to the offense of attempted burglary, (2) under any analysis, the facts of the present case clearly establish, at minimum, an attempted burglary, (3) attempted burglary and the completed offense of burglary are both third-degree felonies, and (4) there was a specific plea bargain for the exact sentence to be imposed, there is simply no prejudice or manifest injustice in enforcing the plea in this case. Under Williams v. State, there can be no withdrawal of a plea, once accepted by the court, "absent a showing of prejudice or manifest injustice" 316 So.2d at 275. For this additional reason, the order denying postconviction relief should be affirmed.

III.
Alternatively, it should be noted that the rationale for the majority opinion applies only to defendant's plea to the new substantive charge of burglary in circuit court case number 94-38113, but not the revocation of defendant's probation in circuit court case number 91-9422 and 91-2423. *733 For purposes of revocation of the defendant's already existing probation, it does not matter whether defendant's 1994 2:30 a.m. visit to Tri-Star is characterized as burglary or attempted burglary: the conduct outlined in the plea colloquy is more than adequate to shock the conscience of the court and justify the revocation of the already-existing probation.
NOTES
[1] We note that the instant situation is not analogous to that in Greer v. State, 354 So.2d 952 (Fla. 3d DCA 1978), where the defendant's burglary conviction was upheld. In Greer, the defendant had entered the fenced-in enclosure surrounding a car dealership. Properly, this court held that this fenced-in area was the curtilage of the dealership building. The distinction between Greer and the instant case (and between Greer and Henry) was that the fence in Greer surrounded only one business entity's building.
[2] We acknowledge, as have other courts, that the precise definition of "curtilage" with respect to a building that is not a dwelling is problematic. See Henry, 707 So.2d at 373. Indeed, the course of Florida jurisprudence regarding curtilage is a somewhat tortured one. See, e.g., Martinez v. State, 700 So.2d 142, 145 (Fla. 5th DCA 1997) (W. Sharp, J., dissenting); Greer v. State, 354 So.2d at 953-54 (Pearson, J., dissenting).
[3] See § 810.02(1) and § 777.04(1), Fla. Stat. (1995).
[4] See § 810.09(1), Fla. Stat. (1995).
[*] Later in the colloquy it came to light that defendant had other pending cases, of which the court had been unaware. This particular plea offer for a 6-year term was withdrawn. Two days later a comprehensive plea agreement was entered for seven years as a habitual violent felony offender with a five-year mandatory minimum.